IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JENNIFER E. HARRIS, | : | |
| | : | |
| Plaintiff, | : | Case No. 1:05-CV-2648 |
| | : | |
| v. | : | Judge Conner |
| | : | |
| MAUREEN T. PORTLAND, | : | Complaint filed:  12/21/05 |
| TIMOTHY M. CURLEY, and | : | |
| THE PENNSYLVANIA STATE | : | ***Electronically Filed*** |
| UNIVERSITY, | : | |
| | : | |
| Defendants. | : | |

## BRIEF IN SUPPORT OF MOTION TO DISMISS BY DEFENDANTS TIMOTHY M. CURLEY and THE PENNSYLVANIA STATE UNIVERSITY

James M. Horne, Esquire
Pa. I.D. 26908
McQUAIDE, BLASKO,
FLEMING & FAULKNER, INC.
811 University Drive
State College, PA  16801
(814) 238-4926
Attorneys for Defendants
Penn State and Timothy Curley

## <u>TABLE OF CONTENTS</u>

<u>Page(s)</u>

1.  PROCEDURAL HISTORY.................................................................  1

2.  STATEMENT OF FACTS..............................................................  1

3.  STATEMENT OF THE QUESTIONS INVOLVED...........................  4

4.  ARGUMENT................................................................................  5

    A.  COUNT V OF PLAINTIFF'S COMPLAINT MUST
        BE DISMISSED FOR FAILING TO STATE A CLAIM
        UPON WHICH RELIEF CAN BE GRANTED.  PLAINTIFF
        CANNOT ESTABLISH THE EXISTENCE OF A
        CONSTITUTIONALLY PROTECTED PROPERTY
        OR LIBERTY INTEREST.......................................................... 5

    B.  COUNT VII OF PLAINTIFF'S COMPLAINT MUST
        BE DISMISSED FOR FAILING TO STATE A CLAIM
        UPON WHICH RELIEF CAN BE GRANTED.  PLAINTIFF
        FAILS TO IDENTIFY RETALIATORY CONDUCT
        SUFFICIENT TO SET FORTH A CLAIM FOR
        VIOLATION OF HER FIRST AMENDMENT RIGHTS........... 14

    C.  COUNTS II, IV, VI, VIII, IX AND X MUST BE
        DISMISSED FOR FAILING TO STATE A CLAIM
        UPON WHICH RELIEF CAN BE GRANTED.  IN THE
        ALTERNATIVE, THE COURT SHOULD EXERCISE
        ITS DISCRETION AND DECLINE TO ACCEPT
        SUPPLEMENTAL JURISDICTION OVER THE
        PLAINTIFF'S STATE CONSTITUTIONAL CLAIMS.............. 17

    D.  THE COURT LACKS JURISDICTION OVER
        PLAINTIFF'S CLAIMS FOR INJUNCTIVE RELIEF
        BECAUSE PLAINTIFF LACKS STANDING TO
        PURSUE PROSPECTIVE INJUNCTIVE RELIEF.
        CONSEQUENTLY, PLAINTIFF'S CLAIMS FOR
        INJUNCTIVE RELIEF IN COUNTS I THROUGH XVIII
        MUST BE DISMISSED................................................................ 20

## TABLE OF CONTENTS (cont'd)

Page(s)

E.   DEFENDANT CURLEY IS ENTITLED TO QUALIFIED
     IMMUNITY WITH RESPECT TO THE CLAIMS SET
     FORTH IN COUNT V (LIBERTY) AND COUNT VII............ 27

F.   PLAINTIFF'S CLAIMS FOR PUNITIVE DAMAGES
     FOR ALLEGED VIOLATIONS OF TITLE VI
     (COUNT XII) AND TITLE IX (COUNT XIII) MUST
     BE DISMISSED............................................................ 29

G.   COUNT XV OF PLAINTIFF'S COMPLAINT MUST
     BE DISMISSED.  PLAINTIFF CANNOT ESTABLISH
     THAT SHE IS AN INTENDED THIRD PARTY
     BENEFICIARY OF ANY CONTRACT BETWEEN
     PENN STATE AND PORTLAND.................................. 31

H.   PLAINTIFF'S CLAIMS FOR GENDER DISCRIMINATION
     IN COUNT I ARE SUBSUMED BY HER TITLE IX
     CLAIMS IN COUNT XIII.  THUS, THIS PORTION OF
     COUNT I MUST BE DISMISSED IN ACCORDANCE
     WITH THE SEA CLAMMER'S DOCTRINE............................. 36

I.   PLAINTIFF FAILS TO STATE A CLAIM FOR RELIEF
     WITH RESPECT TO COUNT XIX (INVASION OF
     PRIVACY-FALSE LIGHT)............................................. 37

J.   THE PRESS RELEASE OF OCTOBER 14, 2005 DOES
     NOT GIVE RISE TO A DEFAMATION CLAIM.  THUS,
     COUNT XX OF PLAINTIFF'S COMPLAINT MUST BE
     DISMISSED................................................................. 40

5.   CONCLUSION................................................................. 40

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

Adamek v. Pennsylvania Interscholastic Athletic Ass'n., Inc., 57 Pa. Commw. Ct. 261, 426 A.2d 1206 (1981) ................................................................................................... 10

Anderson v. Creighton, 483 U.S. 635, 107 S.Ct. 3034 (1987) .................................... 27

Baker v. Lafayette College, 516 Pa. 291, 532 A.2d 399 (1987) .................................. 40

Barnes v. Gorman, 536 U.S. 181, 122 S.Ct. 2097 (2002)...................................... 29, 30

Blaise-Williams v. Sumitomo Bank Ltd., 189 A.D.2d 584, 592 N.Y.S.2d 41 (N.Y. A.D. 1 Dept. 1993) ............................................................................................................... 35

Boone v. Pennsylvania Office of Voc. Rehab., 373 F.Supp.2d 484 (M.D. Pa. 2005) ................. 12

Boyle v. Pennsylvania Interscholastic Athletic Ass'n, Inc., 676 A.2d 695 (Pa. Commw. Ct. 1996) ......................................................................................................................... 10

Brennan v. Norton, 350 F.3d 399 (3rd Cir. 2003)...................................................... 14, 15

City of Los Angeles v. Lyons, 461 U.S. 95, 103 S. Ct. 1660 (1983)........................ 21, 22, 23, 24

Colorado Seminary (University of Denver) v. NCAA, 570 F.2d 320 (10th Cir. 1978)........... 10, 11

Curran v. Children's Service Center of Wyoming County, 396 Pa. Super. 29, 578 A.2d 8 (1990) .................................................................................................................. 37, 39

Dobrich v. Walls, 380 F.Supp.2d 366 (D. Del. 2005) .................................................. 24

Doe v. County of Centre, 242 F.3d 437 (3rd Cir. 2001) .............................................. 30

Dominic v. Wyoming Valley West High Sch., 362 F.Supp.2d 560 (M.D. Pa. 2005) .................. 10

Donovan v. Punxsutawney Area High Sch., 336 F.3d 211 (3rd Cir. 2003)................................. 24

Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 124 S. Ct. 2301, 2308 (2004)........... 21, 23

Ersek v. Township of Springfield, 102 F.3d 79 (3rd Cir. 1996)...................................... 12

Friends of the Earth, Inc. v. Laidlaw Environ. Services, Inc., 528 U.S. 167,  120 S.Ct. 693 (2000).......................................................................................................................... 22

Gally v. Columbia Univ., 22 F.Supp.2d 199 (S.D. N.Y. 1998) .............................................. 7, 8

Gomes v. University of Maine System, 365 F.Supp.2d 6 (D. Me. 2005)...................................... 35

Goodman v. President and Trustees of Bowdoin College, 135 F.Supp.2d 40 (D. Me. 2001)........ 8

Graham v. City of Philadelphia, 402 F.3d 139 (3rd Cir. 2005) ................................................ 12, 28

Gruenke v. Seip, 225 F.3d 290 (3rd Cir. 2000) ............................................................ 27

Guy v. Liederbach, 501 Pa. 47, 459 A.2d 744 (1983) ............................................................ 32, 33

Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727 (1982)................................................ 27

Harris v. Adler Sch. of Prof. Psych., 309 Ill. App.3d 856, 723 N.E.2d 717 (1999)...................... 8

Holmes v. Lankenau Hosp., 426 Pa. Super. 452, 627 A.2d 763 (1993) .................................... 32

Jones v. City of Philadelphia, __ A.2d __, 2005 WL 3695389 (Pa. Commw. Ct. Jan. 25, 2006) ................................................................................................................ 17, 19

Livingston v. Murray, 417 Pa. Super. 202, 612 A.2d 443 (1992).......................................... 40

Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782 (3rd Cir. 2000) ................................................ 12

Middlesex County Sewerage Authority v. National Sea Clammers Association, 453 U.S. 1, 101 S.Ct. 2615 (1981)........................................................................................................... 36

Millar v. Windsor Twp., 2005 WL 1513120 (M.D. Pa. June 24, 2005)...................................... 20

Nicholas v. Pennsylvania State Univ., 227 F.3d 133 (3rd Cir. 2000)...................................... 33, 34

Oxford Assoc. v. Waste System Auth., 271 F.3d 140 (3rd Cir. 2001) .................................... 23, 26
Parish v. NCAA, 506 F.2d 1028 (5th Cir. 1975) ......................................................................... 11
Peralta v. Cendant Corp., 123 F.Supp.2d 65 (D. Conn. 2000) ...................................................... 7
Pfeiffer v. Marion Center Area School District, 917 F.2d 779 (3rd Cir. 1990)............................ 36
Phillips v. County of Bucks, 1999 WL 600541 (E.D. Pa. 1999) .................................................. 24
Poteat v. Harrisburg School District, 33 F.Supp.2d 384 (M.D. Pa. 1999)............................. 12, 13
Reich v. Beharry, 883 F.2d 239 (3rd Cir. 1989) ............................................................................. 9
Rush v. Philadelphia Newspapers, Inc., 732 A.2d 648 (Pa. Super. 1999)............................. 37, 39
Sanguini v. Pittsburgh Bd. of Public Educ., 968 F.2d 393 (3rd Cir. 1992) .................................... 9
Scarpitti v. Weborg, 530 Pa. 366, 609 A.2d 147 (1992)............................................................... 32
Schurr v. Resorts Internat'l Hotel, Inc., 196 F.3d 486 (3rd Cir. 1999) ............................. 21, 22, 23
Spychalsky v. Sullivan, 2003 WL 22071602 (E.D. N.Y. 2003) .................................................... 35
Suarez Corp. Industries v. McGraw, 202 F.3d 676 (4th Cir. 2000)........................................ 15, 16
Swartley v. Hoffner, 734 A.2d 915 (Pa. Super. 1999) .................................................................... 7
Unger v. National Residents Matching Program, 928 F.2d 1392 (3rd Cir. 1991) .......................... 9
Ward v. New York Univ., 2000 WL 1448641 (S.D. N.Y. 2000) ................................................... 35
Williams v. School District of Bethlehem, 988 F.2d 168 (3rd Cir. 1993)............................... 35, 36

## Statutes

20 U.S.C. § 1681............................................................................................................................. 29
28 U.S.C. § 1367(c) ........................................................................................................................ 20
42 U.S.C. § 1983....................................................................................................................... 18, 36
42 U.S.C. § 2000d........................................................................................................................... 29

## Other Authorities

Restatement (Second) Torts §652E .......................................................................................... 37, 38

## Rules

Fed. R.Civ. P. 12(b)(1) and 12(b)(6)........................................................................................... 1, 2

1.     **PROCEDURAL HISTORY**

This action was initiated with the filing of a Complaint on December 21, 2005.  Plaintiff Jennifer E. Harris (hereinafter "Harris" or "Plaintiff") elected to proceed with personal service of the Complaint, and all Defendants were then personally served on January 6, 2006.  On January 26, 2006, Defendant Maureen Portland (hereinafter "Portland") filed a Motion to Dismiss in accordance with the provisions of Fed. R.Civ. P. 12(b)(1) and 12(b)(6).  A similar Motion to Dismiss was filed the same day on behalf of Defendants Timothy M. Curley (hereinafter "Curley") and The Pennsylvania State University (hereinafter "Penn State").  This Brief in Support of the Motion to Dismiss is being timely filed by Defendants Curley and Penn State in accordance with the provisions of L.R. 7.5.  Pursuant to this Court's Order of January 27, 2006, all parties have the right to file a brief with respect to the Motion to Dismiss which does not exceed 40 pages in length.

2.     **STATEMENT OF FACTS**

In November of 2002, Harris signed a letter of intent to play basketball for Penn State.  (Compl., ¶ 21). At the same time, she also signed an Offer of Athletics Grant-in-Aid which specified that it was only for one year, and that its renewal each year required the recommendation of Coach Portland and the approval of University officials.  (Compl., Exhibit A").  Harris enrolled at Penn State in the fall of 2003 and participated on the women's basketball team throughout the

1

2003/2004 and 2004/2005 seasons.  (See generally, ¶¶ 42 - 65).  According to

Harris, throughout that period of time she was subjected to discriminatory conduct

by Portland based on her race, perceived sexual orientation and gender.  (Id.).

Harris claims that this conduct, particularly as it relates to the issue of sexual

orientation, was pursuant to a longstanding course of similar conduct engaged in

by Portland.  (¶¶ 1 - 3).  Harris asserts that although this conduct violates Penn

State policy (see, ¶¶ 25 - 28), Penn State was aware of the violations and acted

with deliberate indifference to these purported violations. (¶ 41).  Harris also

claims that these policies were part of a contract between herself and Penn State.

(Compl., Count XIV).

Harris asserts that Portland acted inappropriately in several respects.  Harris

claims that Portland questioned her about her sexual orientation, and also made the

same inquiries about Plaintiff to other individuals, including Harris' teammates.

(See, e.g., ¶¶ 42, 49, 51, 52).  She asserts that Portland pressured her to dress in a

manner that was more feminine, and to wear her hair in a style that was not

reflective of Harris' African-American status.  (See, e.g., ¶¶ 50, 55).  Harris asserts

that when she did not conform to these suggestions, she was first removed from

the starting line-up for the women's basketball team (¶ 54), pressured to take a

leave of absence (¶ 55), and then eventually discharged from the team completely

(¶ 58).  Harris claims that two other team members, both of whom were also African-American, were discharged from the team at the same time.  (¶ 58).

Following her termination from the team, Harris asserts that additional misconduct occurred.  First, she claims that when she publicly stated she had been terminated from the women's basketball program, she was denied a hearing and her requests for reinstatement were dismissed.  (¶¶ 62 - 63).  Second, she claims that Portland made false statements to the public about the circumstances surrounding her termination.  (¶¶ 73 - 74).  Third, she claims that she was denied participation in the team's annual banquet and denied access to training facilities.  (¶ 65).  Fourth, she claims that Penn State took action which prevented her from becoming eligible to play intercollegiate basketball for the 2005/2006 season.  (¶¶ 67 - 72).  Finally, she claims that when she publicly alleged that her termination from the basketball program was due to discriminatory conduct by Portland, Defendants issued a defamatory press release in response.  (¶ 75).

Based on these assertions, Plaintiff has filed a Complaint which sets forth 20 separate causes of action.  These fall into four general categories:  (1) claims under Section 1983 for purported violations of the United States Constitution (Counts I, III, V, VII); (2)  claims under the Pennsylvania Constitution (Counts II, IV, VI, VIII, IX, X); (3) claims for violation of federal statutory law (Counts XI-XIII); and (4) state common law claims (Count XIV-XX).

3.    **STATEMENT OF THE QUESTIONS INVOLVED**

1.    Does Count V of Plaintiff's Complaint establish the existence of a
      property or liberty interest protected by the procedural due process
      provisions of the United States Constitution?

      (Suggested Answer in the Negative)

2.    Does Count VII of Plaintiff's Complaint establish that she was
      subject to adverse action sufficient to state a claim for retaliation
      protected by the First Amendment?

      (Suggested Answer in the Negative)

3.    Should the Plaintiff's state law constitutional claims set forth in
      Counts II, IV, VI, VIII, IX and X be dismissed for failing to state a
      claim for relief?  In the alternative, should this Court decline to
      exercise supplemental jurisdiction over those claims?

      (Suggested Answers in the Affirmative)

4.    Does Plaintiff lack standing to pursue prospective injunctive relief,
      such that the Court lacks jurisdiction over these claims?

      (Suggested Answer in the Affirmative)

5.    Is Defendant Curley entitled to qualified immunity with respect to
      Plaintiff's claims in Count V (Liberty) and Count VII?

      (Suggested Answer in the Affirmative)

6.    Should Plaintiff's claims for punitive damages under Title VI (Count
      XII) and Title IX (Count XIII) be dismissed?

      (Suggested Answer in the Affirmative)

7.    Should Count XV of Plaintiff's Complaint be dismissed by reason of
      Plaintiff's inability to demonstrate that she is an intended third party
      beneficiary of any contract between Penn State and Portland?

(Suggested Answer in the Affirmative)

8.      Are Plaintiff's claims for gender discrimination in Count I subsumed by her Title IX claims in Count XIII, such that they should be dismissed under the <u>Sea Clammer's</u> doctrine?

(Suggested Answer in the Affirmative)

9.      Should Count XIX of Plaintiff's Complaint (Invasion of Privacy-False Light) be dismissed for failing to state a claim upon which relief can be granted?

(Suggested Answer in the Affirmative)

10.     Should Count XX of Plaintiff's Complaint be dismissed since the press release of October 14, 2005 does not give rise to a defamation claim?

(Suggested Answer in the Affirmative)

## 4.      ARGUMENT

### A.      COUNT V OF PLAINTIFF'S COMPLAINT MUST BE DISMISSED FOR FAILING TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.  PLAINTIFF CANNOT ESTABLISH THE EXISTENCE OF A CONSTITUTIONALLY PROTECTED PROPERTY OR LIBERTY INTEREST.

In Count V of her complaint, Plaintiff asserts a violation of the Procedural Due Process provisions of the United States Constitution.  Plaintiff claims that she had a constitutionally protected property interest "in her contract with Penn State to obtain an undergraduate education and participate in intercollegiate basketball without discrimination on the basis of race, gender or sexual orientation."

(Compl., ¶ 110).  Plaintiff asserts a constitutionally protected liberty interest with respect to "her reputation as a student and an athlete."  (¶ 111).

Preliminarily, it must be noted that Plaintiff does not allege that she was dismissed as an undergraduate student at Penn State.  Indeed, it appears undisputed that Plaintiff remained academically eligible to continue as a student at the University.  With regard to Plaintiff's continued receipt of an athletic grant-in-aid and her concomitant participation as a member of the women's basketball team, Exhibit "A" to the complaint includes the written grant-in-aid agreement. That agreement states on its face that the financial aid award is for a one year period only, and will be renewed only if recommended by the coach and approved by appropriate University officers. Thus, Plaintiff was clearly on notice that her grant-in-aid status was not guaranteed for any length of time beyond one year, and was subject to a yearly renewal process.  Both of these facts, for reasons to be discussed more fully below, mitigate against a determination that Harris possessed any constitutionally enforceable property right.

Moreover, it is highly doubtful that Plaintiff can in the first instance establish the existence of a state law contract right in the form that she has alleged. Plaintiff contends that Penn State's non-discrimination policies are part of an enforceable contract between herself and the University.  It is true that Pennsylvania courts have held that the relationship between a student and a private

college is generally contractual in nature, and that in determining the provisions of

such a contract the courts may look at the written guidelines, policies and

procedures distributed to the student over the course of his or her enrollment.  See,

e.g., Swartley v. Hoffner, 734 A.2d 915 (Pa. Super. 1999), appeal denied, 561 Pa.

660, 747 A.2d 902 (1999).  However, numerous courts have declined to find that

non-discrimination policies of the type at issue in this case rise to the level of an

enforceable contract term.

　　　For example, in Peralta v. Cendant Corp., 123 F.Supp.2d 65 (D. Conn.

2000), a former employee who brought a Title VII claim sought to include a state

law breach of contract claim which rested upon an assertion that his employment

contract included as a term the employer's written non-discrimination policy.  In

rejecting this claim, the district court observed that the policies at issue did not

indicate the employer was undertaking any contractual obligations towards the

plaintiff, but merely reflected the employer's obligation to comply with state and

federal law and to undertake an investigation upon receiving a complaint.  Any

promises in the policies were found to be general statements of adherence to

statutory non-discrimination policies, which standing alone did not create any

independent contractual obligation.  Similarly, in Gally v. Columbia Univ., 22

F.Supp.2d 199 (S.D. N.Y. 1998), a former student in the defendant's dental school

brought a breach of contract claim in connection with her constructive discharge

7

from the University.  As part of that contract claim, Gally asserted a violation of

Columbia's Code of Conduct, which provided in pertinent part that "all students

should receive fair and equal treatment."  The court rejected this claim, finding

that the provision at issue was "merely a general statement of adherence by SDOS

to existing anti-discrimination laws.  It does not create a separate and independent

contractual obligation."  Gally, 22 F.Supp.2d at 208; see also, Harris v. Adler Sch.

of Prof. Psych., 309 Ill. App.3d 856, 861, 723 N.E.2d 717, 722 (1999)("The Adler

School's nondiscrimination policy was a statement of adherence to existing law

and did not constitute, and was not, an independent contractual obligation.");

Goodman v. President and Trustees of Bowdoin College, 135 F.Supp.2d 40 (D.

Me. 2001)(College's non-discrimination policy did not give rise to a contractual

obligation between student and College whereby College promised to refrain from

discrimination; policy was merely a means of permitting the College to itself

pursue discipline against those who violated its terms.).

Assuming, for purposes of this Motion only, that a state law contract right

exists as alleged by Plaintiff, it is readily apparent that this contract right does not

rise to the level of a constitutionally protected property interest.  While a contract

with a state entity may give rise to a property right protected by the Fourteenth

Amendment, not every state contract gives rise to a protected property right.

Unger v. National Residents Matching Program, 928 F.2d 1392 (3rd Cir. 1991).

The reason for this is simple:

> if every breach of contract by someone acting under color of state law
> constituted a deprivation of property for procedural due process
> purposes, the federal courts would be called upon to pass judgment
> on the procedural fairness of the processing of a myriad of contractual
> claims against public entities. [citations omitted]  We agree that such
> a wholesale federalization of state public contract law seems far afield
> from the great purposes of the due process clause.

Reich v. Beharry, 883 F.2d 239, 242 (3rd Cir. 1989).  In line with this, the courts

generally restrict the types of contract rights that are constitutionally protected to

two general categories.  The first are those contracts which confer a protected

status, "such as those characterized by a quality of either extreme dependence in

the case of welfare benefits, or permanence in the case of tenure, or sometimes

both, as frequently occurs in the case of social security benefits."  Unger, 928 F.2d

at 1399.  The second are those contracts whose provisions themselves specify that

the state entity can terminate the contract only for cause.  Id.; see also, Sanguini v.

Pittsburgh Bd. of Public Educ., 968 F.2d 393 (3rd Cir. 1992).

The Plaintiff does not, and indeed cannot, allege that she has a contract with

Penn State that fits within either of the two categories.  Plaintiff does not allege

that her contract confers a protected status, such as is applicable to those receiving

welfare or social security benefits.  She does not allege that her contract was in

any way permanent, as is the case with those who have tenure.  Nor does she point

to any alleged contractual term which provides that it can be terminated only for cause.  Indeed, the express terms of the grant-in-aid agreement place Plaintiff on notice that, rather than being permanent, it is in fact subject to renewal on a year to year basis.  That renewal, in turn, requires the recommendation of the coach and the approval of University officials.  The agreement does not specify that there must be cause shown for any non-renewal of the grant-in-aid.

This Court has held that there is no constitutionally protected property right in continued participation by a high school student in extracurricular activities such as interscholastic athletics.  <u>Dominic v. Wyoming Valley West High Sch.</u>, 362 F.Supp.2d 560 (M.D. Pa. 2005).  (<u>See also</u>, <u>Adamek v. Pennsylvania Interscholastic Athletic Ass'n, Inc.</u>, 57 Pa. Commw. Ct. 261, 426 A.2d 1206 (1981) and <u>Boyle v. Pennsylvania Interscholastic Athletic Ass'n, Inc.</u>, 676 A.2d 695 (Pa. Commw. Ct. 1996), <u>appeal</u> <u>denied</u>, 546 Pa. 684, 686 A.2d 1313 (1996), both of which hold that there is no constitutionally protected property interest in continuing to play interscholastic basketball).  The same point has been reached in the context of college level sporting activities.  For example, in <u>Colorado Seminary (University of Denver) v. NCAA</u>, 570 F.2d 320 (10th Cir. 1978), the appeals court rejected an assertion that the plaintiff student-athletes had a constitutionally protected property interest in their continued participation in intercollegiate sports.  In so holding, the Tenth Circuit rejected an argument that a

different standard applied in the context of college level sports and high school level sports.  As explained by the court:  "We have also considered the point that college athletic scholarship arrangements may create a distinction.  But all considered, we find no more than a difference in degree.  The fundamental positions are the same, the goals are the same, the stakes are pretty much the same."  Colorado Seminary, 570 F.2d at 320.  A similar result was reached by the Fifth Circuit in Parish v. NCAA, 506 F.2d 1028 (5th Cir. 1975).  In that case, the court declined to find the existence of a constitutionally protected property interest in a college student-athlete's right to compete in NCAA sponsored tournaments and televised games.

Plaintiff may assert that her case is different because she alleges that her contract includes a right to be free from discrimination.  Such an argument is mere bootstrapping.  Even if Plaintiff could demonstrate such a contractual right, it is still outside the realm of contracts protected by the due process provisions of the Fourteenth Amendment.  To the extent a contract as alleged by Plaintiff exists and has been violated, Plaintiff's remedies are either by way of a state law contract claim or a discrimination claim.

Plaintiff similarly fails to establish that she has a constitutionally protected liberty interest.  The Third Circuit has warned against equating a state law defamation claim with a Section 1983 cause of action that rests upon the

Fourteenth Amendment.  Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782 (3rd Cir. 2000).  "[T]he Fourteenth Amendment does not protect against injury to reputation alone."  Merkle, 211 F.3d at 797.

Rather, a plaintiff seeking to recover on a claim for violation of a liberty interest must demonstrate "stigma plus."  Graham v. City of Philadelphia, 402 F.3d 139 (3rd Cir. 2005).  That is, the plaintiff "must show a stigma to his reputation plus some concomitant infringement of a protected right or interest." Graham, 402 F.3d at 142 n.2.  The exact contours of the "plus" requirement remain unsettled, such that it is not clear at this time whether the "plus" must itself be a protectable property interest.  Nevertheless, it is clear that the plus element must involve some substantial interest, such as loss of employment.  See, e.g., Graham, 402 F.3d at 139; Ersek v. Township of Springfield, 102 F.3d 79 (3rd Cir. 1996); Boone v. Pennsylvania Office of Voc. Rehab., 373 F.Supp.2d 484 (M.D. Pa. 2005).  As for the "stigma" element, while it is not limited to statements that suggest just dishonesty or immorality, it does require that the plaintiff show government action "that infringes upon a person's good name, reputation, honor, or integrity."  Boone, 373 F.Supp.2d at 497.   A court considering a claim of a protected liberty interest should consider whether the statements at issue seriously damage the plaintiff's standing and associations in the community.  Poteat v. Harrisburg Sch. Dist., 33 F.Supp.2d 384 (M.D. Pa. 1999).  Statements that suggest

an individual is incompetent, or which have only the possibility of affecting future employment, do not rise to the level of a constitutionally protected liberty interest. Poteat, 33 F.Supp.2d at 393.

Applying these standards to the case at hand, it is apparent that Plaintiff fails to allege facts which give rise to a claim cognizable under the Fourteenth Amendment.  Just as there is no constitutionally protected property interest in participation in intercollegiate athletics, statements that reflect upon Plaintiff's performance as a member of Penn State's women's basketball program cannot rise to the level of governmental action that affect a constitutionally protected reputational interest.  Nor does the termination of her continued participation on the basketball team compare to the type of "plus" element that has been suggested as necessary under the applicable case law.  Plaintiff's remedy with regard to the complained of conduct is to pursue, as she has, a state law claim for defamation. A constitutional remedy simply does not exist under the facts as set forth in Plaintiff's complaint.

**B.   COUNT VII OF PLAINTIFF'S COMPLAINT MUST BE DISMISSED FOR FAILING TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.  PLAINTIFF FAILS TO IDENTIFY RETALIATORY CONDUCT SUFFICIENT TO SET FORTH A CLAIM FOR VIOLATION OF HER FIRST AMENDMENT RIGHTS.**

In considering whether Plaintiff has set forth, under the facts pled, a *prima facie* claim for retaliation against her for the purported exercise of her First Amendment rights, it must be observed that the "adverse action" which is at the heart of Plaintiff's case took place before, not after, Plaintiff spoke out.  That is, Harris' allegedly protected speech activities took place after she had been dismissed from the basketball team, not before.  The retaliatory actions upon which Plaintiff relies for her First Amendment claim are that Portland made false statements about her academic and athletic performance, that Portland told team members and others not to cooperate in any investigation of Harris' allegations, and that Portland told these same individuals not to associate or communicate with Harris.

Such claims do not give rise to a First Amendment retaliation claim.  In Brennan v. Norton, 350 F.3d 399 (3rd Cir. 2003), the Third Circuit examined the type of retaliatory conduct required for a First Amendment claim.  In doing so, the Court held that conduct such as refusing to rehire an employee who exercised First Amendment rights, or conduct relating to fundamental employment decisions such

14

as promotion, transfer, recall or hiring, could support a cause of action for retaliatory conduct.  On the other hand, conduct of the type alleged by Harris, such as criticism, false accusations and verbal reprimands, are not the type of actions that are sufficient to rise to the level of adverse action for purposes of a First Amendment retaliation claim.

In its decision in Brennan, the Third Circuit cited with approval to the Fourth Circuit's holding in Suarez Corp. Industries v. McGraw, 202 F.3d 676 (4th Cir. 2000).  In Suarez, the Fourth Circuit observed that courts have generally declined to find that a state actor's actions adversely affect an individual's exercise of First Amendment rights where those actions consisted of "criticism, false accusations, or verbal reprimands."  Suarez, 202 F.3d at 686.  This includes conduct such as falsely accusing an employee of criminal wrongdoing, verbal reprimands, criticism and withholding of merit pay increases.

As further observed by the Fourth Circuit, where the alleged retaliatory acts themselves include speech, there are additional issues that come into play which weigh against finding that actionable retaliation has occurred.  This is because in such a circumstance the alleged retaliator's own First Amendment rights must be accommodated as well.  "Thus, where a public official's alleged retaliation is in the nature of speech, in the absence of a threat, coercion, or intimidation intimating that punishment, sanction, or adverse regulatory action will imminently

follow, such speech does not adversely affect a citizen's First Amendment rights even if defamatory." <u>Suarez</u>, 202 F.3d at 687.

In considering whether Portland's alleged conduct was such as to deter Harris' exercise of her First Amendment rights, a review of the Complaint shows that it did not.  The first set of alleged retaliatory acts presumably took place in the spring of 2005 when Harris claims that she revealed to the public at large that she had been discharged from the women's basketball team.  Clearly, whatever was done at that time by Defendants did not deter Harris from later publicly asserting that the discharge was motivated by discrimination.  Similarly, the allegedly defamatory remarks made in response to these assertions did not deter Harris from proceeding with the filing of this lawsuit and the continued airing of her grievances.  It is difficult to see, in the face of these undisputable facts, how Harris can realistically assert that adverse retaliatory conduct sufficient to deter a reasonably hardy individual from exercising her First Amendment rights has taken place.

16

**C.** **COUNTS II, IV, VI, VIII, IX AND X MUST BE DISMISSED FOR FAILING TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.  IN THE ALTERNATIVE, THE COURT SHOULD EXERCISE ITS DISCRETION AND DECLINE TO ACCEPT SUPPLEMENTAL JURISDICTION OVER THE PLAINTIFF'S STATE CONSTITUTIONAL CLAIMS.**

A significant segment of Plaintiff's twenty count complaint relies upon alleged violations of various provisions of the Pennsylvania Constitution.  (See Counts II, IV, VI, VIII, IX and X).  With respect to each of these Counts, the Plaintiff requests an award of compensatory and punitive damages, along with extensive injunctive relief.

Plaintiff clearly presumes that there exists a private cause of action for monetary damages under Pennsylvania law with regard to alleged violations of the state constitution.  To the contrary, the first Pennsylvania appellate case to address this precise issue has just recently held that no private cause of action for monetary damages exists with respect to alleged state constitutional violations.

In Jones v. City of Philadelphia, __ A.2d __, 2005 WL 3695389 (Pa. Commw. Ct. Jan. 25, 2006), the plaintiff brought suit against 11 police officers and the City, claiming that he had suffered personal injuries when the officers used excessive force while apprehending him for driving a stolen car.  The trial court, in what was termed a "constitutional case of first impression," denied the defendants' motion for summary judgment and held that plaintiff was entitled to pursue a

claim for money damages for the alleged violation of his state constitutional rights.  Owing to the importance of the issue involved, the Commonwealth Court granted interlocutory review and ultimately reversed the trial court's decision.

In so doing, the Commonwealth Court first considered whether the scope of protection provided by the specific section of the Pennsylvania Constitution at issue, under the facts of the case, was co-extensive with the scope of protection afforded plaintiff by the comparable provisions of the United States Constitution. After determining that this was indeed the case, the Court next looked at the question of whether the Open Courts provision of the Pennsylvania Constitution, Article I, Section 11, necessitated finding that a monetary damages award was available for alleged violations of the Pennsylvania Constitution.  The Court held that no such finding was required, as plaintiff had available to him the remedies afforded under Section 1983 as well potentially the entitlement to declaratory or prospective injunctive relief.  The Court therefore concluded that the creation of a new cause of action for money damages for violation of the state constitution was not required.  In so holding, the Court emphasized that "there is no state statute which generally provides for a right to sue for this violation."  (Compare with 42 U.S.C. § 1983).  The Court further cautioned against the creation of a new monetary remedy, where remedies already existed under federal law, without the benefit of express legislative action.

In a lengthy footnote to its opinion, the Commonwealth Court reviewed numerous federal cases that have considered the issue of whether a private cause of action for monetary damages exists for alleged violations of the Pennsylvania Constitution.  Jones, at ✳31 n.33.  As correctly observed by Commonwealth Court:

> neither have the federal courts recognized a civil cause of action for money damages under any provision of the Pennsylvania Constitution.  The federal courts have been reluctant to decide the 'novel question' of whether a private cause of action exists for damages for violation of the Pennsylvania Constitution, believing that state courts are better equipped to determine which causes of action derive from our constitution.  In fact, the overwhelming majority of federal cases in which this issue has been raised either fail to reach the merits of the case or decline to exercise jurisdiction.

Id.  Given the decision by the Commonwealth Court in Jones, and considering the uniform reluctance of the federal courts to hold otherwise, this Court should dismiss the state constitutional claims brought by Plaintiff.  There is simply no existing authority to support Plaintiff's assertion that a private cause of action exists for violations of the Pennsylvania Constitution, particularly when that cause of action includes a claim for monetary damages.

Should this Court determine not to dismiss Plaintiff's state constitutional claims for failing to state claims upon which relief can be granted, the Court should, in the alternative, exercise its discretion and decline to exercise supplemental jurisdiction over the claims set forth in Counts II, IV, VI, VIII, IX

and X.  See, 28 U.S.C. § 1367(c); Millar v. Windsor Twp., 2005 WL 1513120

(M.D. Pa. June 24, 2005)(This court declined to exercise supplemental jurisdiction

over state constitutional law claims as they included a claim for money damages

and state law in this area remained unsettled.).

> **D.     THE COURT LACKS JURISDICTION OVER PLAINTIFF'S
> CLAIMS FOR INJUNCTIVE RELIEF BECAUSE PLAINTIFF
> LACKS STANDING TO PURSUE PROSPECTIVE
> INJUNCTIVE RELIEF.  CONSEQUENTLY, PLAINTIFF'S
> CLAIMS FOR INJUNCTIVE RELIEF IN COUNTS I
> THROUGH XVIII MUST BE DISMISSED.**

In addition to seeking monetary damages, Plaintiff also requests injunctive

relief in Counts I through XVIII of her Complaint.  (See Compl. Counts I – XVIII,

Wherefore clause).  Specifically, Plaintiff asks this Court to grant the following

relief in addition to monetary damages:

> . . .an order (a) enjoining Defendants from inquiring about the sexual
> orientation of Jennifer Harris and others; (b) enjoining Defendants
> from harassing or otherwise discriminating on the basis of race,
> gender or sexual orientation; (c) requiring Penn State require Ms.
> Portland, Mr. Curley and all other Intercollegiate Athletic Department
> staff members to participate in annual mandatory trainings on
> discrimination based on race, gender and sexual orientation; (d)
> requiring Penn State to adopt a meaningful grievance procedure
> specifically for student athletes and Intercollegiate Athletic
> Department staff that does not require a student or staff member to
> register his or her complaint with a coach or immediate supervisor
> and that protects their confidentiality; (e) requiring Penn State to
> notify student athletes and staff about the grievance procedure by
> providing each student athlete and staff member, each year before the
> start of each sport's season, with a separate written notification
> outlining the grievance procedure; (f) requiring Penn State to appoint

> a full-time staff person specifically designated to monitor the
> Intercollegiate Athletic Department's compliance with law and
> University policies prohibiting discrimination on the basis of race,
> gender and sexual orientation and to assist student athletes and staff
> who allege that they are being discriminated against on any of these
> bases; . . .

(Id.).  Plaintiff is no longer a student at Penn State, and has not demonstrated that she will be subject to any polices, procedures, or conduct of Defendants Penn State, Curley or Portland in the future.  Consequently, Plaintiff cannot demonstrate standing to pursue her claims for prospective injunctive relief in this lawsuit, and the court lacks jurisdiction over these claims.

Standing is a prerequisite to a federal court's jurisdiction to hear a dispute. See, e.g., City of Los Angeles v. Lyons, 461 U.S. 95, 101, 103 S. Ct. 1660, 1665 (1983); Schurr v. Resorts Internat'l Hotel, Inc., 196 F.3d 486, 491 (3rd Cir. 1999). Standing requirements ensure that the party raising an issue for judicial resolution has a sufficient "'personal stake in the outcome' in order to 'assure that concrete adverseness which sharpens the presentation of the issues' necessary for proper resolution of constitutional questions." City of Los Angeles, 461 U.S. at 101, 103 S. Ct. at 1665.

In federal court actions, standing has both a constitutional and a prudential component.  Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 124 S. Ct. 2301, 2308 (2004).  The constitutional component of the standing doctrine derives

from the case or controversy requirement of Article III of the United States Constitution.  See Schurr, 196 F.3d at 491.  To satisfy the "case or controversy" requirement, a plaintiff must at a bare minimum demonstrate:  (1) an injury in fact; (2) a causal connection between the injury and the conduct complained of; and (3) that it is likely, and not merely speculative, that the injury will be redressed by a favorable judicial decision.  Id.

A plaintiff must demonstrate standing separately as to each form of relief sought in an action.  Friends of the Earth, Inc. v. Laidlaw Environ. Services, Inc., 528 U.S. 167, 185, 120 S.Ct. 693, 706 (2000); see also, City of Los Angeles, 461 U.S. at 108-109, 103 S. Ct. at 1668-69 (dismissing claims for injunctive relief for lack of standing and allowing damages claim to proceed).  A party seeking prospective injunctive relief may not base constitutional standing solely on claims of past exposure to allegedly unlawful conduct.  See City of Los Angeles, 461 U.S. at 102, 103 S.Ct. at 1665.   To have standing to pursue claims for forward-looking declaratory or injunctive relief, a plaintiff must demonstrate a likelihood of being subject to the allegedly unlawful conduct of the defendants in the future. City of Los Angeles, 461 U.S. at 105-110, 103 S. Ct. at 1667-69; Schurr, 196 F.3d at 495.  Speculative allegations of possible future exposure based on "some day intentions" are not sufficient to confer standing to seek forward-looking injunctive relief.  Id.

A plaintiff who meets the requirements for constitutional standing must also demonstrate prudential standing.  See Elk Grove Unified Sch. Dist., 542 U.S. 1, 124 S.Ct. 2301 (2004); Oxford Assoc. v. Waste System Auth., 271 F.3d 140, 145 (3rd Cir. 2001).  Prudential standing concerns whether a particular plaintiff is "'a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers,'"  Oxford Assoc., 271 F.3d at 145, and ensures that "only those parties who can best pursue a particular claim will gain access to the courts." Id.  In ascertaining whether prudential standing requirements have been met, courts consider the following:  (1) whether the party is asserting her own legal interest, rather than the interests of third parties; (2) the principle that courts should not adjudicate "abstract questions of wide public significance which amount to generalized grievances," Oxford Assoc., 271 F.3d at 146; and (3) whether a litigant demonstrates that her interests are arguably within the zone of interests protected by the constitutional provision or other rule of law on which the claim is based.  Id.

Applying the principles discussed above, courts have consistently dismissed claims for injunctive relief and other forward-looking remedies based on lack of standing when a plaintiff cannot show that she continues to be subject to the allegedly unlawful conduct or policy at issue.  See, e.g., City of Los Angeles, 461 U.S. at 105-110, 103 S. Ct. at 1667-69; Schurr, 196 F.3d at 495; Dobrich v. Walls,

380 F.Supp.2d 366, 372-73 (D. Del. 2005). Cf. Donovan v. Punxsutawney Area High Sch., 336 F.3d 211, 216 (3rd Cir. 2003) (noting in analogous context of mootness doctrine that claims for injunctive or declaratory relief vis-à-vis school policy typically become moot on student's graduation because relief would not have any impact on student). In City of Los Angeles, for example, the Supreme Court held that a plaintiff could not pursue injunctive relief from an allegedly unconstitutional police practice of applying chokeholds because the plaintiff, who had been the victim of such a chokehold in the past, could not demonstrate that he was likely to be subject to the same conduct in the future. 461 U.S. at 108-109, 103 S. Ct. at 1668-69. In Phillips v. County of Bucks, 1999 WL 600541 (E.D. Pa. 1999)( Memorandum Opin.), the district court held that prison inmates seeking injunctive relief from allegedly unlawful polices of a particular prison lacked standing to maintain their claims because they were no longer incarcerated in the offending prison facility. Id. at *4. The court cited to the principle that past exposure does not demonstrate a present case or controversy. Id. Similarly, in Dobrich v. Walls, 380 F.Supp at 366, the district court held that the plaintiff parents lacked standing to bring a derivative claim on behalf of their child for injunctive relief based on a school prayer policy when the child had been transferred to another school before the suit was brought. Dobrich, 380 F.Supp. 2d at 372-73.

In the case at bar, Plaintiff's requests for injunctive relief derive from alleged instances of past conduct by Penn State employees and exposure to ostensible Penn State policies or customs while Plaintiff was a student at Penn State.  (See Compl., generally).  Plaintiff is no longer a student at Penn State, (see id. ¶ 71), and cannot demonstrate that she continues to be subject to the allegedly unlawful conduct and polices of Defendants, or that she is likely to be subject to the conduct or policies in the future if the requested relief were not granted. Plaintiff asks the court to grant an injunction prohibiting Defendants from inquiring about Plaintiff's sexual orientation, (see Compl. at Counts I-XVIII, Wherefore clause, §§ (a)-(f)), but does not explain how she would be subject to such inquires by Defendants in the future.  Plaintiff cannot show that the injunctive relief she seeks would likely redress any injury that she herself suffered or will suffer, or that the relief would have any impact upon her personally.

Plaintiff also requests an injunction to prevent Penn State from inquiring into the sexual orientation of "others."  (See id., Wherefore clause, § (a)).  This request for relief fails both the constitutional and prudential standing requirements.  An injunction governing the relationship between Defendants and "other" individuals not even party to this lawsuit could not possibly redress any injury to Plaintiff, such that she cannot meet the bare constitutional standing requirements vis-à-vis this form of relief.  Moreover, prudential standing concerns

caution against permitting litigants to raise claims of third parties, and require that courts refrain from adjudicating "abstract questions of wide public significance which amount to generalized grievances."  Oxford Assoc., 271 F.3d at 146. Permitting Plaintiff to proceed on the basis of the interests of others would clearly violate these principles.

For these same reasons, Plaintiff lacks standing to purse her claims for prospective injunctive relief to enjoin Penn State from engaging in harassment and/or discrimination in the future, and to require Penn State to adopt various procedures and training programs to prevent future harassment and/or discrimination.  (See Compl., Counts I-XVIII, Wherefore clause, §§ (b)-(f)). Given that Plaintiff is no longer a student at Penn State and is thus not subject to Defendants' conduct, polices, or customs, Plaintiff simply cannot demonstrate that this broad injunctive relief, even if granted, would redress harm to her individually.

In sum, although Plaintiff may allege facts sufficient to demonstrate standing to pursue her damages claims, Plaintiff cannot show that the prospective injunctive relief she seeks would likely redress any injury to her own interests. Consequently, Plaintiff cannot meet either the constitutional or prudential standing requirements, and her claims for prospective injunctive relief in Counts I through XVIII must be dismissed pursuant to Rule 12 (b)(1) for lack of jurisdiction, or

pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

**E.   DEFENDANT CURLEY IS ENTITLED TO QUALIFIED IMMUNITY WITH RESPECT TO THE CLAIMS SET FORTH IN COUNT V (LIBERTY) AND COUNT VII.**

In Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727 (1982), the Supreme Court set forth the following standard with respect to qualified immunity: "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  457 U.S. at 818, 102 S.Ct. 2727.  Harlow was then further clarified in Anderson v. Creighton, 483 U.S. 635, 107 S.Ct. 3034 (1987), wherein the Supreme Court held that government officials are shielded from liability by reference to the 'objective legal reasonableness' of their actions.  The Court in Anderson also elaborated on the meaning of the phrase "clearly established right," stating that "the contours of the  right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Anderson, 483 U.S. at 639, 107 S.Ct. at 3034.  See also, Gruenke v. Seip, 225 F.3d 290 (3rd Cir. 2000).

In this case, Defendant Curley is entitled to qualified immunity with respect to:  (1)  Plaintiff's claim of a constitutionally protected liberty interest (Count V)

and (2) Plaintiff's claim of a First Amendment violation (Count VII). With regard to the former, the Third Circuit has stated that the contours of protection afforded to a liberty interest are not well established, particularly with regard to the question of what constitutes the "plus" element of the stigma plus doctrine. See, Graham, 402 F.3d at 142 n.2. There is certainly no clear precedent which establishes that either the reputational interests raised by Harris, or the accompanying loss of participation in intercollegiate athletics, satisfy the stigma-plus test. Accordingly, it seems apparent that Curley could not be charged with knowing that the alleged failure to provide Harris with a name clearing hearing constituted a violation of her Fourteenth Amendment right to be free from deprivation of liberty without due process of law.

With respect to Count VII, as argued previously Defendants believe this entire Count should be dismissed as a matter of law for failing to state a claim upon which relief can be granted. At a minimum, however, this Court should find that viewed objectively, Curley acted reasonably to the extent he permitted, or assisted in, the making of public comments on the events surrounding Harris' termination from the basketball team. This includes any action by Curley with regard to the issuance of the October 2005 press release that responded to the publicly disseminated discrimination charges against Portland. Neither of these actions implicate a clearly established legal right. Indeed, a reasonable public

official would believe that he has both a right and an obligation to speak out on matters such as those publicly aired by Harris.

Thus, to the extent this Court rejects the motion to dismiss filed by Defendants as to Counts V and VII, the Court should at a minimum dismiss those claims to the extent brought against Curley in his individual capacity.

### F.    PLAINTIFF'S CLAIMS FOR PUNITIVE DAMAGES FOR ALLEGED VIOLATIONS OF TITLE VI (COUNT XII) AND TITLE IX (COUNT XIII) MUST BE DISMISSED.

In Count XII of her Complaint, Plaintiff asserts a claim for racial discrimination pursuant to Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d.  In Count XIII, Plaintiff brings a claim for gender discrimination pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681.  Plaintiff's prayers for relief in both Counts contain a specific request for an award of punitive damages.  These claims fail because punitive damages are not recoverable in claims brought pursuant to either Title VI or Title IX.

In Barnes v. Gorman, 536 U.S. 181, 122 S.Ct. 2097 (2002), the Supreme Court held that punitive damages may not be awarded in private suits brought under the Americans with Disabilities Act (ADA) or the Rehabilitation Act.  In reaching this conclusion, the Supreme Court reasoned that both the ADA and the Rehabilitation Act incorporated the remedies and the procedures of Title VI.  The Court explained that Title VI invoked Congress' spending power so as to place

conditions on the grant of federal funds.[1]  The Court characterized Title VI and

Title IX and other spending clause legislation as being in the nature of a contract

where, in return for federal funds, the recipients agree to comply with federally-

imposed conditions.  The Court further observed that punitive damages are a kind

of remedy not typically available in contract claims.  536 U.S. at 187-8, 122 S.Ct.

at 2102.  According to the Court in Barnes, punitive damages could not be implied

as a remedy because it is highly doubtful that recipients of federal funding would

have agreed to expose themselves to such unorthodox and indeterminate liability

in exchange for the receipt of the federal funding in question.

       Approximately one year before the Supreme Court's decision in Barnes, the

Third Circuit had considered the issue of the availability of punitive damages in

connection with a claim for disability discrimination under the ADA and Section

504 of the Rehabilitation Act, as well as racial discrimination under Title VI of the

Civil Rights Act of 1964.  In Doe v. County of Centre, 242 F.3d 437 (3rd Cir.

2001), the Third Circuit affirmed this Court's ruling that punitive damages were

not available to the claimants in connection with their ADA and Rehabilitation

Act claims.  In so holding, the Third Circuit similarly recognized that the ADA

and the Rehabilitation Act incorporated by reference the enforcement scheme

---

[1] In Barnes, the Supreme Court also noted that it has interpreted Title IX consistently with Title VI.  Id.,
536 U.S. 181, 185, 122 S.Ct. 2097, 2100 (2002).

found under Title VI.  The Third Circuit took specific note of the "prevailing view" that punitive damages were not available in any form under Title VI.  242 F.3d at 457.

Thus, it is now well-established that there exists no right to punitive damages under either Title VI or Title IX.  Consequently, Plaintiff's claims for punitive damages in Counts XII and XIII must be dismissed.

**G.     COUNT XV OF PLAINTIFF'S COMPLAINT MUST BE DISMISSED.  PLAINTIFF CANNOT ESTABLISH THAT SHE IS AN INTENDED THIRD PARTY BENEFICIARY OF ANY CONTRACT BETWEEN PENN STATE AND PORTLAND.**

In Count XV, Plaintiff alleges in vague and conclusory fashion that she is a third party beneficiary of a contract purported to exist between Defendants Penn State and Portland.  Plaintiff asserts that as part of this contract, Portland allegedly agreed to abide by federal and state law, as well as Penn State policies AD-29 (Statement on Intolerance), AD-42 (Statement on Non-Discrimination and Harassment), and AD-53 (Privacy Statement).  Plaintiff contends that, as a member of the women's basketball team, she was an intended beneficiary of the "Penn State Portland Contract."  (¶ 173).  Plaintiff contends that Defendant Portland breached the contract by discriminating against her based on the perception that she was a lesbian, because she did not conform to gender stereotypes, by invading her privacy, and by retaliating against her.

The case law in Pennsylvania regarding third party beneficiaries is "restrictively enforced." Holmes v. Lankenau Hosp., 426 Pa. Super. 452, 627 A.2d 763, 770 (1993), (Bronsky, J. concurring), appeal denied, 538 Pa. 671, 649 A.2d 673 (1994). In Scarpitti v. Weborg, 530 Pa. 366, 609 A.2d 147 (1992), the Pennsylvania Supreme Court set forth the standards which must be met before a third party may state a claim for enforcement of contract rights:

> Accordingly, we hold that a party becomes a third party beneficiary only where both parties to the contract express an intention to benefit the third party in the contract itself, ... unless the circumstances are so compelling that recognition of the beneficiary's right is appropriate to effectuate the intention of the parties, and their performance satisfies an obligation of the promisee to pay money to the beneficiary or the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

530 Pa. at 372-73, 609 A.2d at 150-51 (citations omitted). Under this standard, a person is considered a third party beneficiary only in two limited circumstances: (1) if both parties to the contract expressly state an intention to benefit that party in the contract itself, or (2) under a narrow, two-prong exception first adopted in Guy v. Liederbach, 501 Pa. 47, 459 A.2d 744 (1983). The first prong of the Guy test for third party beneficiary status sets forth a standing requirement, which vests discretion with the Court to determine whether recognition of third party beneficiary status would be "appropriate." Such recognition is only appropriate, however, where the circumstances are "so compelling" that recognition would "effectuate the intention of the parties." Scarpitti, 530 Pa. at 371-72, 609 A.2d at

150.  The second prong of the test recognizes that enforcement of the performance at issue must be necessary to satisfy an obligation by the promisee to either pay money to the beneficiary or to give the beneficiary the benefit of the promised performance.

Here, Plaintiff has wholly failed to identify any provision of the alleged Penn State-Portland contract that expressly states that Penn State or Portland intended to benefit Plaintiff.  Thus, the question turns to whether Plaintiff can invoke the two-prong exception from Guy.  Plaintiff's claim fails the Guy test for two primary reasons.  First, Plaintiff fails to adequately allege that the policies at issue are actually part of the employment contract between Penn State and Defendant Portland.  Secondly, Plaintiff fails to allege compelling circumstances suggesting that it would be appropriate for her to benefit from those alleged contractual terms.

Regarding the first deficiency, it has long been recognized that an employer's voluntary adherence to guidelines or policies affecting the employment relationship does not give rise to contract rights on the part of the employee.  Mere administrative provisions in a personnel manual or policy handbook simply do not rise to the level of agreement by which an employer must abide.  Nicholas v. Pennsylvania State Univ., 227 F.3d 133, 145 (3rd Cir. 2000).  As noted by the

33

Third Circuit in <u>Nicholas</u>, it is incumbent upon the plaintiff to prove, or in this posture to adequately plead, that the employer communicated an offer that included the specific policy language at issue as a material contractual term to the employee, and that the employer made the offer in order to induce the employee to accept or continue employment.  In other words, Plaintiff must allege facts sufficient to establish that the subject policies were part of the bargained-for exchange that induced Portland to accept the offer of employment from Penn State.  Not only has Plaintiff failed to make such an allegation, but instead Plaintiff alleges that Portland has in fact always acted to the contrary.  Plaintiff alleges that Portland has engaged in a campaign of discrimination and harassment for the entirety of her 25 year career with Penn State.  (Compl., ¶¶ 1-3). Consequently, one cannot fairly infer from Plaintiff's own allegations that the Penn State policies were part of the bargained-for exchange that induced Portland to accept employment with Penn State.  Indeed, Plaintiff's own Complaint suggests that they were not.

Nor has Plaintiff alleged any compelling circumstances that would render recognition of Plaintiff's alleged third party beneficiary status appropriate.  In fact, as discussed more fully in Section 4.A. of the within Brief at pp. 7-9, courts routinely hold that an institution's unilateral policies do not create contractual rights, and that such policies are simply a reflection of the institution's intent to

abide by existing law as opposed to reflecting an intent for the institution to create

binding contractual obligations.  (In addition to those cases previously cited, see

Gomes v. University of Maine System, 365 F.Supp.2d 6 (D. Me. 2005)(ruling that

provisions of student disciplinary code regarding nature of judicial hearings did

not create a contractual right to discovery in connection with disciplinary

proceedings); Spychalsky v. Sullivan, 2003 WL 22071602 (E.D. N.Y. 2003),

aff'd, 96 Fed. Appx. 790 (2nd Cir. 2004)(finding that broad policy language in

admissions materials and student handbooks does not create contractual rights);

Ward v. New York Univ., 2000 WL 1448641 (S.D. N.Y. 2000)(same); Blaise-

Williams v. Sumitomo Bank Ltd., 189 A.D.2d 584, 592 N.Y.S.2d 41 (N.Y. A.D. 1

Dept. 1993)(rejecting bank employee's breach of contract action based upon

general statement of equal opportunity and non-discrimination contained in an

employee handbook).  In view of the plethora of judicial opinions squarely finding

that general policy statements such as those relied upon by Plaintiff do not give

rise to contractual rights, it can hardly be said that Plaintiff has alleged compelling

circumstances to justify recognition of third party beneficiary status under the

circumstances.

**H.    PLAINTIFF'S CLAIMS FOR GENDER DISCRIMINATION IN COUNT I ARE SUBSUMED BY HER TITLE IX CLAIMS IN COUNT XIII.  THUS, THIS PORTION OF COUNT I SHOULD BE DISMISSED IN ACCORDANCE WITH THE <u>SEA CLAMMER'S</u> DOCTRINE.**

Count I of Plaintiff's Complaint is brought pursuant to 42 U.S.C. § 1983, and asserts an Equal Protection violation based on three separate grounds:  (1) Harris' status as an African-American; (2) her status as one perceived to be lesbian; (3) her status as one who did not conform to gender stereotypes of femininity.  With regard to the latter, which is a gender-based claim, it is by now well established in the Third Circuit that a Section 1983 claim for violation of equal protection is subsumed by an accompanying claim brought under Title IX.  <u>Williams v. School Dist. of Bethlehem</u>, 998 F.2d 168 (3rd Cir. 1993), <u>cert.</u> <u>denied</u>, 510 U.S. 1043, 114 S.Ct. 689 (1994); <u>Pfeiffer v. Marion Center Area School District</u>, 917 F.2d 779 (3rd Cir. 1990).  These holdings are in accordance with the Supreme Court's decision in <u>Middlesex County Sewerage Authority v. National Sea Clammers Association</u>, 453 U.S. 1, 101 S.Ct. 2615 (1981).

In light of this clear precedent, Count I of Plaintiff's Complaint, to the extent based on gender discrimination, must be dismissed.

I.     **PLAINTIFF FAILS TO STATE A CLAIM FOR RELIEF WITH RESPECT TO COUNT XIX (INVASION OF PRIVACY-FALSE LIGHT).**

The tort of invasion of privacy is comprised of four separate causes of action.  Curran v. Children's Service Center of Wyoming County, 396 Pa. Super. 29, 38, 578 A.2d 8, 12 (1990), appeal denied, 526 Pa. 648, 585 A.2d 468 (1991); Restatement (Second) Torts §652E.  Plaintiff asserts a claim under the false light theory of invasion of privacy at Count XIX of her Complaint.

A claim for false light invasion of privacy involves "publicity that unreasonably places the other in a false light before the public."  Rush v. Philadelphia Newspapers, Inc., 732 A.2d 648, 654 (Pa. Super. 1999)(citations omitted).  A plaintiff has the burden of demonstrating that the false light in which she was placed would be highly offensive to a reasonable person and that defendants knew of, or acted in reckless disregard as to, the falsity of the matter and the false light in which it placed the plaintiff.  Curran, 369 Pa. Super. at 38-39, 578 A.2d at 12.  Liability under this theory will only attach where

> the defendant knows that the plaintiff as a reasonable man, would be justified in the eyes of the community in feeling seriously offended and aggrieved by the publicity....It is only when there is such a major misrepresentation of his character, history, activities or beliefs that serious offense may reasonably be expected to be taken by a reasonable man in his position, that there is a cause of action  for invasion of privacy.

369 Pa. Super. at 39-40, 578 A.2d at 12.

Here, Plaintiff's claim rests entirely upon the press release of October 14, 2005, attached as Exhibit "D" to her complaint.  This press release was issued by Portland only after Harris had publicly asserted that she had been dismissed from the Penn State women's basketball team <u>and</u> that this dismissal was the product of discriminatory conduct by Portland in violation of Penn State policy.  Simply stated, Portland was understandably responding, in the same public fashion as was first used by Harris, to the serious charges leveled against her in order to fully assert her innocence and to exercise her right to give to the public her view of the circumstances surrounding Harris' departure from the team.  Under these facts, it is apparent that publicity regarding this matter had been eagerly sought by Harris and those representing her, and that it was in fact the Plaintiff and her representatives who placed this matter into the public eye in the first instance.  Under such a scenario, Plaintiff cannot satisfy the basic elements of a false light invasion of privacy claim.

The Restatement (Second) Torts, § 625E, provides as follows:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if

> (a)  the false light in which the other was placed would be highly offensive to a reasonable person, and

    (b) the actor had knowledge of or acted in reckless disregard as
to the falsity of the publicized  matter and the false light in which the
other would be placed.

Id.  Initially, it is readily apparent that neither Portland nor Penn State gave

publicity to an otherwise private matter, which common sense dictates is at the

heart of an invasion of privacy claim.  Rather, publicity had already been given to

this matter by Harris and her representatives, who by doing so clearly invited

Portland and the public in general to comment on the issues raised.  That the

comments by Portland were not to Harris' liking is not surprising, but this hardly

rises to the level of an actionable tort.  Indeed, the courts are understandably

reluctant to find an actionable invasion of privacy where the matter at hand is one

of legitimate public concern, which Harris presumably felt was the case by virtue

of her own public statements.  Rush, 732 A.2d 648.  Nor can Harris demonstrate

that the comments made by Portland, responding as they did to the charges of

discrimination made against her, would be highly offensive to a reasonable person

under the circumstances in which they were made.  Curran, 396 Pa. Super. 29, 578

A.2d 8.

    Accordingly, Count XIX of Plaintiff's complaint should be dismissed as it

seeks to hold Portland liable for doing nothing more than defending herself against

the charges publicly leveled by Harris in the first instance.

**J.    THE PRESS RELEASE OF OCTOBER 14, 2005, DOES NOT GIVE RISE TO A DEFAMATION CLAIM.  THUS, COUNT XX OF PLAINTIFF'S COMPLAINT MUST BE DISMISSED.**

This argument is extensively developed in the brief filed on behalf of Defendant Portland.  To avoid unnecessary duplication, Defendants herein will rely upon the contentions as set forth by Defendant Portland.  Defendants Curley and Penn State share the belief that the press release is incapable of a defamatory interpretation.  Baker v. Lafayette College, 516 Pa. 291, 532 A.2d 399 (1987); Livingston v. Murray, 417 Pa. Super. 202, 612 A.2d 443 (1992), appeal denied, 533 Pa. 601, 617 A.2d 1275 (1992).

**5.    CONCLUSION**

Defendants Curley and Penn State request that Plaintiff's Complaint be dismissed to the extent of the relief requested in the within brief.

Respectfully submitted,

McQUAIDE, BLASKO,
FLEMING & FAULKNER, INC.

Dated:  February 9, 2006          By:  s/James M. Horne
                                        James M. Horne, Esquire
                                        Pa. I.D. 26908
                                        811 University Drive
                                        State College, PA  16801
                                        (814) 238-4926

                                        Attorneys for Defendants
                                        Penn State and Timothy Curley

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JENNIFER E. HARRIS,                          :
                                             :
                          Plaintiff,         :        Case No. 1:05-CV-2648
                                             :
         v.                                  :        Judge Conner
                                             :
MAUREEN T. PORTLAND,                         :        Complaint filed:  12/21/05
TIMOTHY M. CURLEY, and                       :
THE PENNSYLVANIA STATE                       :        *Electronically Filed*
UNIVERSITY,                                  :
                                             :
                          Defendants.        :

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of Defendants' Timothy M. Curley and The Pennsylvania State University's Brief in Support of Motion to Dismiss in the above-captioned matter was served on this, the 9th day of February, 2006, to the attorneys/parties of record as follows:

Sharon F. McKee, Esquire                    Jack M. Stover, Esquire
Shanon Levin Lehman, Esquire                Buchanan Ingersoll, PC
Hangley, Aronchick, Segal & Pudlin          213 Market Street, 3rd Floor
30 North Third Street, Suite 700            P.O. Box 120023
Harrisburg, PA  17101                       Harrisburg, PA  17108
(717) 364-1030                              (717) 237-4800

Of Counsel:                                  Of Counsel:

Shannon Minter, Esquire                      Mark R. Hornak, Esquire
National Center for Lesbian Rights           David J. Porter, Esquire
1325 Massachusetts Ave., NW,                 Buchanan Ingersoll, P.C.
Suite 600                                    One Oxford Centre
Washington, DC  20005                        301 Grant Street, 20th Floor
(202) 737-0012                               Pittsburgh, PA  15219
                                             (412) 562-8800

Karen M. Doering, Esquire
Regional Counsel                             Attorneys for Defendant
National Center for Lesbian Rights           Maureen T. Portland
3170 Third Avenue, North
St. Petersburg, FL  33713
(727) 490-4260


Attorneys for Plaintiff



                         McQUAIDE, BLASKO,
                         FLEMING & FAULKNER, INC.


                         By:  s/James M. Horne
                              James M. Horne, Esquire
                              Pa. I.D. 26908
                              811 University Drive
                              State College, PA  16801
                              (814) 238-4926

                              Attorneys for Defendants
                              Penn State and Timothy Curley